**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MOJIRADE JAMES** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 24-2232** |
| | : | |
| **GINETTE MCMANUS, BAXTER** | : | |
| **CREDIT UNION, CITADEL CREDIT** | : | |
| **UNION a/k/a CITADEL AGENCY LLC,** | : | |
| **LINCOLN INVESTMENT a/k/a** | : | |
| **LINCOLN INVESTMENT PLANNING,** | : | |
| **LLC, TEACHERS INSURANCE AND** | : | |
| **ANNUITY ASSOCIATION OF** | : | |
| **AMERICAN – COLLEGE** | : | |
| **RETIREMENT EQUITIES FUND,** | : | |
| **WELLS FARGO BANK, N.A.,** | : | |
| **PRUDENTIAL FINANCIAL, INC** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                          **June 27, 2024**

Mojirade James won a judgment in Philadelphia state court against Ginette McManus.  Ms. James then sued Ms. McManus before another state court (not the one defining her judgment) claiming Ms. McManus fraudulently transferred funds allegedly subject to her judgment to retirement and pension accounts managed by financial institutions to avoid paying her. She also alleged the financial institutions converted the money when it accepted Ms. McManus's funds.

Two of the financial institutions removed here. They pleaded complete preemption and we face significant questions of federal law arising under the Employee Retirement Income Security Act (ERISA). Ms. James moved to remand. The financial institutions conceded complete preemption does not apply.  They instead focus on our ability to exercise the sparingly-invoked "arising under" federal law basis for subject matter jurisdiction. They argue Ms. James's state law

execution claims require a court resolve Congress's mandate in ERISA prohibiting the alienation of benefits under an employee benefit plan.

We face a complex multi-layered issue of subject matter jurisdiction. The financial institutions do not meet their heavy burden as the removing parties of demonstrating our subject matter jurisdiction reserved for a special and small category of cases "arising under" federal law. Ms. James's state law claims do not require us to resolve significant federal issues creating "arising under" jurisdiction. We remand these issues, including the pending motions to dismiss, to the state court for analysis of Ms. James's claim under defined Pennsylvania statutes. We find no basis to sanction the financial institutions for removing based on fairly presented arguments Ms. James's claims arise under federal law.

## I.      Background

Ginette McManus sold a home to Mojirade James several years ago. Ms. James believed the purchased home contained undisclosed defects. She sued Ginette McManus in Philadelphia state court over four years ago for failing to disclose structural defects in real property she bought from Ms. McManus.[1] Ms. James tried her claims to a Philadelphia County jury. The jury found in favor of Ms. James on some claims, including under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, and awarded Ms. James $43,300 in damages on March 16, 2023.[2]

### *Ms. James unsuccessfully attempted to increase the judgment amount.*

Ms. James then moved for treble damages, attorney's fees and costs as allowed by Pennsylvania's Unfair Trade Practices and Consumer Protection Law.[3] The Honorable Angelo J. Foglietta denied treble damages on April 14, 2023 but awarded Ms. James $86,500 in attorney's fees and costs and expert fees in the amount of $7,967.89.[4] The total judgment in favor of Ms.

James amounted to $137,767.89.[5] Ms. James later recorded her judgment against Ms. McManus in the Montgomery County Court of Common Pleas.[6]

Ms. McManus's counsel, Glenn A. Brown, moved to amend judgment after Ms. James's counsel attempted to collect more than the judgment entered by Judge Foglietta.[7] Judge Foglietta, on March 21, 2024, granted Ms. McManus's motion and clarified the total judgment in favor of Ms. James is $137,767.89, ordered Attorney Brown to amend the certificate of judgment filed in the Montgomery County Court of Common Pleas, and ordered any writ of execution in the Philadelphia County Court of Common Pleas to reflect the correct amount of the judgment.[8] Ms. James appealed Judge Foglietta's Order to the Pennsylvania Superior Court.[9] Judge Foglietta, "shocked by [Attorney Brown's] unscrupulous conduct," requested the Pennsylvania Superior Court either sanction counsel for "continuing to engage in this outrageous and unethical conduct" or remand the matter to him for a sanctions hearing.[10]

Attorney Brown seemingly ignores Judge Foglietta's Order confirming an award of $137,767.89. Attorney Brown continues to represent in some filings in this Court Ms. McManus "won" a judgment in the amount of $181,067.89, including in an amended Complaint Attorney Brown filed here bound by Federal Rule of Civil Procedure 11 knowing of Judge Foglietta's judgment.[11] Attorney Brown lacks an objectively reasonable basis to continue to claim a Philadelphia County jury awarded his client a judgment in the amount of $181,067.89 when Judge Foglietta's Orders clearly show otherwise and ordered him to correct the amount in his filing.

### *Ms. James then sued Ms. McManus and others in Montgomery County to collect on the incorrect judgment amount.*

Ms. James then sued Ms. McManus and Baxter Credit Union, Citadel Credit Union, Lincoln Investment, and Teachers Insurance in the Montgomery County Court of Common Plea for violations of Pennsylvania's Uniform Voidable Transactions Act, 12 Pa. Cons. Stat. Ann.

§ 5101, *et seq.*, conversion, and unjust enrichment in an effort to collect her judgment she continues to challenge on appeal.[12] She tries to collect a judgment amount far beyond the amount ordered by Judge Foglietta while simultaneously disputing the judgment amount. Ms. James continued to assert a judgment in an amount greater than she is owed knowing of Judge Foglietta's direct Order. She chose to bring this suit in a state court outside of Philadelphia; she sued in Montgomery County.

Ms. James alleged Ms. McManus fraudulently transferred monies to the Financial Institutions in an effort to hinder, delay, and defraud her and to render Ms. McManus insolvent, unable to pay the judgment.[13] Ms. James asks the Montgomery County court (avoiding Judge Foglietta in Philadelphia) to determine Ms. McManus transferred monies in violation of Pennsylvania's Uniform Voidable Transactions Act (assuming a final judgment); "deem" the transfers void and order Ms. McManus "return" all of her transferred assets to Ms. James; and issue injunctive relief "against any further disposition of the assets", an order directing the Financial Institutions satisfy the judgment against Ms. McManus, an award of $181,067.89 plus interest, punitive damages and attorney's fees and costs; take judicial action "as is necessary to ensure" Ms. James's "funds" held by the Financial Institutions are "frozen or otherwise secured and transferred;" order an accounting; direct the Financial Institutions be Ms. James's debtor and to pay her; and grant other relief in law and equity.[14]

### Lincoln Investment removed the Montgomery County action and moved to dismiss the complaint along with other Defendants.

Lincoln Investment removed Ms. James's Montgomery County action.[15] It invoked our federal question jurisdiction, alleging the monies Ms. James seeks to recover are held in Ms. McManus's retirement accounts which may not be alienated under the Employee Retirement Income Security Act.[16] Lincoln Investment asserts it is the custodian of Ms. McManus's Internal

Revenue Code section 403(b) retirement account and a rollover Individual Retirement Account both of which are "employee welfare benefit plans" as defined by ERISA.[17] Lincoln Investment argues any claim by Ms. James to the monies "may arise under ERISA" creating a federal question for removal.[18] Teachers Insurance supports removal asserting ERISA's anti-alienation provision governs Ms. McManus's St. Joseph's University Retirement Plan giving us jurisdiction over the removed action.[19]

Lincoln Investment, Teachers Insurance, Baxter Credit Union, and Ms. McManus each moved to dismiss the complaint.[20] Ms. James amended to assert the same claims but added Wells Fargo Bank, N.A. and Prudential Financial, Inc.[21] Lincoln Investment and Teachers Insurance each moved to dismiss the amended Complaint now pending before us.[22]

## II.   Analysis

Ms. James moves to remand arguing we lack subject matter jurisdiction.[23] She argues her claim is not completely preempted by ERISA and thus not removable. Ms. James also seeks sanctions against unidentified Defendants arguing the removal "lacks an objectively reasonable basis."[24] Lincoln Investment and Teachers Insurance oppose remand and sanctions.[25] Ms. McManus opposed the sanctions motion but expressed no position on remand.[26] We agree with Ms. James and remand her claim for review of the merits (particularly on a non-final judgment) to our distinguished colleagues on the Court of Common Pleas of Montgomery County.

Congress allows parties to remove cases originally filed in state court to federal court if the federal court would have original jurisdiction over the case.[27] Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."[28] The removing party "carries a heavy burden of showing that at all stages of the litigation

the case is properly before the federal court" and "[r]emoval statutes are to be strictly construed, with all doubts to be resolved in favor of remand."[29]

Lincoln Investment, as the removing party, must show either (1) Ms. James's state law claims are completely preempted by federal law; or (2) there is "some substantial federal issue [that] must be resolved."[30]

Lincoln Investment and Teachers Insurance first pleaded removal by asserting Ms. McManus's retirement accounts are "employee welfare benefits plans" within the meaning of ERISA and ERISA's "express preemption" provision supersedes "any and all" state laws.[31] Lincoln Investment and Teachers Insurance asserted because Ms. James "seeks to enforce a claim or right that may arise under ERISA," it is properly removed.[32]

Ms. James moved to remand. She argued we lack subject matter jurisdiction because ERISA does not completely preempt her state law claims. She argued we lack subject matter jurisdiction because Lincoln Investment's defense—ERISA's anti-alienation provision—does not appear on the face of her well-pleaded complaint.[33]

Lincoln Investment and Teachers Insurance then refocused their removal theory. They specifically disavowed an argument ERISA completely preempts Ms. James's claims.[34] They agreed they lacked a basis for removal on one of their pleaded grounds.

But they also referred to our "arising under" jurisdiction in the Notice of removal. Lincoln Investment and Teachers Insurance now clarify the basis of our jurisdiction over Ms. James's state law claims rests on the Supreme Court's guidance in *Grable & Sons Metal Products, Inc.* and *Gunn v. Minton* allowing for jurisdiction where the state law claims raise "substantial" federal issues.[35] Ms. James replied the Supreme Court's teachings in *Grable* and *Gunn* do not apply because her claims do not raise a substantial question of federal law.[36]

### A. Ms. James's state law claims do not raise a significant federal question under *Grable* and *Gunn*.

In *Grable*, the older of the two cases, the Supreme Court explained federal question jurisdiction is typically invoked by a plaintiff pleading a cause of action created by federal law.[37] But the Court in *Grable* met the "less frequently encountered" variety of "arising under" federal jurisdiction.[38] There, the Internal Revenue Service seized Grable's property to satisfy its federal tax delinquency. Federal law required the IRS to give notice of the seizure before it sold the property to a buyer. Grable brought a quiet title action in state court arguing the buyer's title is invalid because the IRS failed to provide notice of seizure in the manner required by federal statute.[39] The buyer removed the state court action to federal court asserting resolution of the title issue depended on the interpretation of the IRS notice statute. The Court held Grable's claim arose under federal law because whether the IRS gave Grable notice within the meaning of the federal statute is "an essential element of its quiet title claim," the meaning of the federal statute is "actually in dispute" and it "appears to be the only legal or factual issue contested in the case."[40] The Court upheld federal jurisdiction over the quiet title claim.

The Supreme Court in *Gunn* eight years later defined the "special and small category" of "arising under" jurisdiction as distilled into one question: "Does the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?"[41] In *Gunn*, Mr. Minton sued his attorney for malpractice in an underlying patent infringement case. Mr. Minton claimed his attorney Mr. Gunn waived an argument causing Mr. Minton to lose his infringement claim and the invalidation of his patent. Mr. Gunn defended the malpractice claim by arguing the patent infringement claims would have failed even if the waived argument had been timely raised.[42]

After losing in state court, Mr. Minton appealed arguing his state law malpractice claim in the patent infringement case "arises under" federal patent law and the state court lacked subject matter jurisdiction. The Supreme Court held the resolution of federal patent law is "necessary" to Mr. Minton's malpractice claim because Mr. Gunn's alleged error in failing to make a particular patent argument went to the causation element of the malpractice case; that is, to prevail on his legal malpractice claim, Mr. Minton had to show he would have prevailed in his patent infringement case but for his attorney's failure to make an argument.[43] This "necessarily" required application of patent law to Mr. Minton's malpractice claim, one of four prongs required for "arising under" jurisdiction.[44]

The Court requires we apply a four-part test to answer its query: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."[45] Federal subject matter jurisdiction is proper when we find the removing party met all four prongs because "there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.'"[46]

Following *Grable* and *Gunn*, our Court of Appeals instructs a "small number of state law claims may arise under federal law if the state claims raise 'significant federal issues.'"[47] For example, our Court of Appeals in *City of Hoboken* examined whether the City's state law tort claims against oil company Chevron "arise under" federal law.[48] The defendant oil companies removed arguing the City's state tort claims arose under federal law because, *inter alia*, they are "inherently federal" or because the state tort claims "raised substantive federal issues."[49] Our Court of Appeals rejected the oil company's arguments and affirmed the district court's order remanding

the case to state court. The court, applying *Grable* and *Gunn*, concluded it already determined there is no complete preemption, ordinary preemption is a defense, and defenses "are not the kinds of substantial federal questions" supporting federal jurisdiction.[50]

Other courts of appeals, like our Court of Appeals, considers a federal issue is "necessarily raised" when it is "a *necessary* element of one of the well-pleaded state claims" [51] For example, in *Minnesota by Ellison*, the Court of Appeals for the Eighth Circuit affirmed remand of the State's common law fraud and state consumer protection statutes against defendant energy companies.[52] The energy companies argued Minnesota's claims "necessarily raised" federal issues involving "cost-benefit analyses" performed by the federal government. The Court of Appeals for the Eighth Circuit rejected this argument. It concluded the energy companies "fail[ed] to identify which specific elements of Minnesota's claims require the court to either interpret and apply federal common law or second-guess Congress's cost-benefit rationales in allowing the production and sale of fossil fuels."[53] Because the energy companies could not satisfy the "necessarily raised" element, the court of appeals concluded *Grable* did not apply to the pleaded state law claims.[54]

We are also guided by the Court of Appeals for the Second Circuit's reasoning last year in *Solomon v. St. Joseph Hospital* in reviewing whether "a right or immunity created by the Constitution or laws of the United States is an element, and an essential one, of the plaintiff's cause of action."[55] In *Solomon*, a patient sued a hospital and health system in state court for negligence and malpractice for COVID-19-related injuries. The health providers removed, asserting immunity under the federal Public Readiness and Emergency Preparedness Act from plaintiff's COVID-19-related injuries. The Court of Appeals for the Second Circuit held the health providers' removal improper because Congress did not completely preempt the patient's state law claims nor did the claims "arise under" federal law.[56] The court of appeals concluded state law tort claims did not on

their face raise a question of federal law. The court rejected the health providers' immunity argument asserted under the federal statute, explaining the court's "inquiry must be unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose ... even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case."[57]

### 1. Ms. James's Pennsylvania Uniform Voidable Transactions Act claim does not require analysis of a significant federal question.

We turn to Ms. James's three state law claims to determine if their elements "necessarily raise" a significant federal question, actually disputed and substantial, and capable of resolution without disrupting federal–state balance.

Pennsylvania's General Assembly, through the Uniform Voidable Transactions Act, allows judges to find "a transfer made or obligation incurred by a debtor … as to a creditor" is voidable if the debtor made the transfer or incurred the obligation either with actual fraud or constructive fraud.[58] The purpose of the Act "is to protect creditors by preventing a debtor from placing assets otherwise available to pay creditors out of the reach of those creditors" and "to prevent a debtor from putting assets otherwise available to its creditors out of their reach. … At its core, fraudulent transfer law is a debt-collection device and not a revenue generating tool; its mission is to prevent the unjust diminution of the debtor's estate."[59]

Under the Act's "actual fraud" theory of liability, "[a] transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: … with actual intent to hinder, delay or defraud any creditor of the debtor; …."[60] Ms. James must demonstrate Defendants actually intended to hinder or defraud her as a creditor.[61] To show actual fraud, Ms. James must allege facts establishing "badges of fraud" specified in the Act.[62]

The Act's second theory of liability presumes constructive fraud where the creditor shows "without receiving a reasonably equivalent value in exchange for the transfer or obligation," the debtor "(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due."[63] To show constructive fraud, Ms. James must allege facts supporting the elements identified in section 5104(a)(2).

Both Lincoln Investment and Teachers Insurance argue Ms. James's fraud claims under the Act "necessarily raise" a federal question because the Act makes voidable transfers of property to the extent such property is an "asset." They argue we must apply ERISA's anti-alienation provision to determine the definition of "asset" as already defined by the Pennsylvania General Assembly. They ask we jump through multiple hoops to reach their conclusion:

- Pennsylvania's General Assembly makes voidable a "transfer" by a debtor as to a creditor if the debtor made the transfer or incurred the obligation with actual or constructive fraud;[64]

- The General Assembly defines "***transfer***" as "[e]very mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an ***asset*** or an interest in an asset. The term includes payment of money, release, lease, license and creation of a lien or other encumbrance;"[65]

- The General Assembly defines "***asset***" as "property of a debtor" and "***property***" is "anything that may be subject of ownership;"[66]

- But an "asset" does not include, *inter alia*, "property to the extent it is generally exempt under nonbankruptcy law."[67]

We agree as to the General Assembly's defined elements of the offense. Our analysis stops there. We are not persuaded anyone needs to consult Congress's ERISA mandates. Ms. James's fraudulent transaction claim does not depend on the meaning of ERISA's anti-alienation provision.

She instead relies on Pennsylvania definitions. The Pennsylvania General Assembly defines "asset."

ERISA's anti-alienation provision bars the garnishment of pension benefits.[68] We need not consult the anti-alienation provision to define "asset" under Pennsylvania's Act. We need only consult Pennsylvania law set by the General Assembly in 42 Pa. Cons. Stat. Ann. § 8124(b) providing funds in certain retirement accounts are exempt from execution. The issue relates to Pennsylvania law as Ms. James does not dispute the nature of the Ms. McManus's funds.

Lincoln Investment and Teachers Insurance argue Ms. James will have to prove as an element of her claim the "transfer" of an "asset." Agreed. But then they go a bridge too far. Lincoln Investment and Teachers Insurance argue because "asset" does ***not*** include "property to the extent it is generally exempt under nonbankruptcy law," and ERISA's anti-alienation provision exempts from garnishment benefits of an employee welfare plan, a federal question is "necessarily raised."[69] Ms. James appears to be claiming a transfer of available assets under Pennsylvania law to an ERISA plan. The question is whether those funds allegedly transferred to exempt plans are subject to execution under Pennsylvania law mindful federal law bars collection of assets in ERISA plans managed by Lincoln Investment and Teachers Insurance. This issue does not arise under federal law. And Lincoln Investment and Teachers Insurance do not meet their burden otherwise.

Defendants' reliance on *Guidry v. Sheet Metal Workers National Pension Fund* is distinguishable.[70] Mr. Guidry pleaded guilty to embezzling funds from his union. The union obtained a judgment against Mr. Guidry. The district court imposed a constructive trust on Mr. Guidry's pension benefits, affirmed by the court of appeals. The Supreme Court reversed, holding imposing a constructive trust to remedy Mr. Guidry's theft of money from the union (and not the union's pension plans) violated ERISA's anti-alienation provision.[71] The facts of *Guidry* are

distinguishable. Ms. James alleges Ms. McManus and the Financial Institutions fraudulently transferred money intending to hinder, delay, or defraud her as alleged judgment creditor of Ms. McManus. There is no transfer in *Guidry*; the question there is whether the union could garnish Mr. Guidry's pension benefit.

Judge Sánchez's analysis in *Burns v. Cooper*, relied on heavily by Lincoln Investment and Teachers Insurance, offers guidance on the exempt nature of retirement funds from execution under ERISA but does not address "arising under" jurisdiction.[72] Judge Sánchez did not need to address the "arising under" issue.  He addressed a retirement plan's motion to dismiss a removed case and quash a judgment creditor spouse's writ of execution on monies held by a former husband debtor in his retirement plan. The former wife obtained a judgment against her former husband and sought to execute on his retirement plans. The garnishee employer argued ERISA's anti-alienation provision exempted the retirement plans from garnishment like the Lincoln Investment and Teachers Insurance's arguments to dismiss. The former wife did not dispute Congress intended the challenged money in the employer's pension funds to be protected under ERISA. Judge Sánchez concluded ERISA's express, or ordinary, preemption under section 514(a) applied to preempt state law.[73] As explained earlier, express preemption does not confer subject matter jurisdiction and is distinguishable from complete preemption which does confer jurisdiction. Judge Sánchez concluded Mr. Cooper's retirement plan with his employer is exempt from execution to satisfy the former wife's judgment under ERISA's anti-alienation provision.[74] Judge Sánchez did not address jurisdiction nor did anyone ask him to do so. He only addressed express preemption. And, even if somehow Judge Sánchez's decision could be interpreted to imply federal subject matter jurisdiction, his decision rested on preemption – which Lincoln Investment and Teachers Insurance have disavowed – and **not** on *Grable* and *Gunn's* "arising under" jurisdiction.  Lincoln Investment

and Teachers Insurance make this same substantive argument in moving to dismiss. But we need to first ensure subject matter jurisdiction.

Lincoln Investment (and by consent Teachers Insurance) bear a heavy burden to show the case is properly before us. They do not do so. Lincoln Investment and Teachers Insurance did not meet their burden to show a federal issue "necessarily raised" by an element of Ms. James's Pennsylvania statutory claim.

### 2. Ms. James does not plead a significant issue of federal law in her conversion and unjust enrichment claims.

Lincoln Investment and Teachers Insurance do not address Ms. James's state law conversion and unjust enrichment claims in opposition to remand.

Under Pennsylvania law, conversion is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification."[75] Unjust enrichment is a "quasi-contractual" doctrine under Pennsylvania law requiring Ms. James to allege "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."[76]

We do not perceive—and neither do Defendants argue—these state law claims "necessarily raise" a federal issue conferring federal jurisdiction.

### B. We deny Ms. James's Motion for sanctions.

Ms. James seeks sanctions in the form of attorney's fees and costs for her remand motion, relying on the Supreme Court's decision in *Martin v. Franklin Capital Corp.*[77] In *Martin*, the Court addressed the "proper standard" for an award of attorney's fees on remanding a removed case to state court under 28 U.S.C. § 1447(c).[78] The Court held the standard for awarding fees "should

turn on the reasonableness of the removal."[79] We may award attorney's fees under section 1447(c) "**only** where the removing party lacked an objectively reasonable basis for seeking removal."[80] The Court directs us to deny fees when an objectively reasonable basis exists.[81] We have discretion "to consider whether unusual circumstances warrant a departure from the rule in a given case."[82] In the Court's example, a "plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees."[83]

We deny Ms. James's motion. Ms. James moved for sanctions arguing there is no objectively reasonable basis for removal based on any argument.[84] Lincoln Investment and Teachers Insurance clarified they did not remove on a complete preemption theory, but instead focus on the limited language in their Notice of Removal on the *Grable/Gunn* "arising under" federal law theory. Ms. James's reply did not address sanctions in the context of the *Grable/Gunn* theory.

We cannot say Lincoln Investment and Teachers Insurance lacked an objectively reasonable basis for seeking removal. We are guided by our Court of Appeals in *Inselberg v. New York Football Giants, Inc.*[85] Mr. Inselberg sued in New Jersey state court asserting state law unjust enrichment and misappropriation claims. The New York Giants removed, arguing Mr. Inselberg's claims were really patent infringement claims and, even if not patent infringement claims, would require resolution of a substantial and actually disputed question of patent law removable under *Grable* and *Gunn*. Mr. Inselberg moved to remand arguing there is no basis for removal.

Magistrate Judge Falk recommended the motion for remand be denied. Judge Martini did not adopt the recommendation and concluded he lacked jurisdiction under *Grable* and remanded the case but denied Mr. Inselberg's request for attorney's fees and costs associated with the remand motion.[86] Judge Martini denied the request for fees and Mr. Inselberg appealed.

Our Court of Appeals affirmed. It reasoned the dispute "concerns two complex areas of federal jurisdiction law": the complete preemption doctrine and *Grable/Gunn* jurisdiction.[87] Our Court of Appeals concluded the New York Giants had an objectively reasonable basis for seeking removal "[g]iven the difficult nature of the jurisdictional issues involved."[88] Given similar jurisdictional issues, particularly the *Grable/Gunn* doctrine which "has not been a model of clarity," we also find Lincoln Investment and Teachers Insurance had an objectively reasonable basis to seek removal. We deny Ms. James's motion for attorney's fees and costs under section 1447(c).

## III.   Conclusion

We grant Ms. James's motion and remand this matter (including the pending Motions to dismiss) to the Montgomery County Court of Common Pleas.  We deny Ms. James's request for sanctions.

---

[1] ECF No. 23–1 at 1.

[2] ECF No. 1–5 at 33–34 (using the pagination supplied by the CM/ECF docketing system).

[3] *Id.* at 36.

[4] *Id.*

[5] *Id.*

[6] ECF No. 23–1 at 2.

[7] ECF No. 23–1. Attorney Brown attempted to collect a total of $181,067.89; the total amount of $137,767.89 plus another $43,300. Ms. James continues to claim in this action she is owed $181,067.98 despite Judge Foglietta's categorical rejection of the higher sum. We remind counsel of his duty of candor to the court.

[8] ECF No. 23–1 at 2–3.

[9] On April 17, 2024, Ms. James appealed from Judge Foglietta's March 21, 2024 Order to the Pennsylvania Superior Court. The Superior Court entered a briefing schedule and the matter is currently pending. *See James v. McManus, et al.*, No. 1162 EDA 2024.

[10] ECF No. 23-1 at 8. Judge Foglietta held a hearing on March 21, 2024 to determine the reason Attorney Brown believed his client is entitled to an additional $43,300 in damages over the judgment amount, for a total of $181,067.89. Attorney Brown first asserted Judge Foglietta lacked jurisdiction to clarify his initial order awarding $137,767.89. Judge Foglietta rejected Attorney Brown's argument and entered an order on March 21, 2024 granting Ms. McManus's motion and clarifying the total judgment awarded Ms. James is $137,767.89. Attorney Brown then filed a Motion for reconsideration, "blatantly mischaracterize[ing] the procedural actions" by Judge Foglietta and arguing Ms. James had been awarded treble damages despite Judge Foglietta's denial of treble damages. *Id.* at 3. One week later, Attorney Brown filed a Motion for clarification. Judge Foglietta denied the Motion for reconsideration and Motion for clarification. Undeterred, Attorney Brown filed a Motion to stay proceedings and notice of appeal to the Superior Court. *Id.* at 1–4. In his opinion under Pa. R. App. P. 1925(a), Judge Foglietta concluded Ms. James's issue on appeal "is meritless and warrants no relief on appeal …" as interlocutory. *Id.* at 4. Judge Foglietta also addressed the merits of Ms. James's arguments and Attorney Brown's conduct, including finding:

- "[T]his appeal is a brazen and deliberate attempt to collect more on a judgment than [Attorney Brown's] client was awarded by the judicial system of this Commonwealth …" (ECF No. 23-1 at 6);

- "[R]espectfully request that [Attorney] Brown be sanctioned or that the matter be remanded for sanctioning by this Court for attempting to perpetrate a fraud on the court and continuing to waste judicial resources" (*Id.*);

- Attorney Brown's conduct is "a blatant and repeated attempt at a fraud upon the Court" (*Id.*);

- Attorney Brown's argument "is inapposite to the law" (*Id.* at 7);

- Attorney Brown's "misunderstanding of this Court's … order awarding 'double damages' is inexcusable …" (*Id.*); and

- Advanced a "ridiculous argument" (*Id.* at 8).

[11] ECF Nos. 8, 17. We remind counsel we may impose Rule 11 sanctions to deter pleading and litigation misconduct. *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 147 (3d Cir. 2024). Attorneys appearing in this Court may be sanctioned for "objectively unreasonable conduct – in a word, negligence." *Id.*at 148 (citation omitted). When Attorney Brown "present[ed] to the court a pleading, written motion, or other paper," he "certifi[ed] that to the best of [his] knowledge, information, and belief, formed after an *inquiry reasonable under the circumstances*: … (3) the factual contentions have evidentiary support." *Id.* at 147 (quoting Fed. Civ. P. 11(b)) (emphasis

added).  We decline to consider sanctions against Ms.  James and her counsel as we divest jurisdiction in this case.

[12] ECF No. 1–3 at 2–22 (using the pagination supplied by the CM/ECF docketing system). For ease of reference, we refer to Baxter Credit Union, Citadel Credit Union, Lincoln Investment, and Teachers Insurance collectively as the "Financial Institutions."

[13] *Id.*

[14] *Id.*

[15] ECF No. 1. Ms. McManus, Baxter Credit Union, and Teachers Insurance consented to removal. *Id.* ¶ 9. Lincoln Investment contends Ms. James has not served Citadel Credit Union. *Id.* ¶ 10.

[16] 29 U.S.C. § 1001, *et seq.*

[17] ECF No. 1 ¶¶ 14–15. Teachers Insurance contends it is the custodian of the proceeds in Ms. McManus's St. Joseph's University Retirement Plan, a 403(b)  plan governed by ERISA. ECF No. 22 at 2.

[18] ECF No. 1 ¶¶ 15–17. Baxter Credit Union consented to removal. It contends Ms. McManus maintains a checking account with a closing balance of $100. ECF No. 13–1. Baxter Credit Union does not assert these are funds governed by ERISA.

[19] ECF No. 22.

[20] ECF Nos. 5, 9, 12, 13.

[21] ECF No. 17. We dismissed Defendants' motions to dismiss as moot on the filing of the amended Complaint, amended the caption to reflect the two new Defendants, and ordered the Clerk of Court to issue summonses to Wells Fargo Bank, N.A. and Prudential Financial, Inc. ECF No. 20.

[22] ECF Nos. 30, 31.

[23] ECF No. 8.

[24] ECF No. 8–1 at 14–15.

[25] ECF Nos. 22, 23.

[26] ECF No. 11. Baxter Credit Union did not respond to Ms. James's Motion for remand. The docket does not reflect proof of service of summons and the complaint on Citadel Credit Union and newly added Wells Fargo Bank, N.A. and Prudential Financial, Inc.

[27] *Home Depot U.S.A. v. Jackson*, 587 U.S. ---, 139 S.Ct. 1743, 1746 (2019) (citing 28 U.S.C. § 1441(a)).

[28] 28 U.S.C. § 1331.

[29] *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014) (quoting *Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009)).

[30] *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 707 (3d Cir. 2022) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005)).

[31] ECF No. 1 ¶ 15.

[32] *Id.* ¶ 17.

[33] ECF No. 8.

[34] ECF No. 22 at 6; ECF No. 23 at 8. Our Court of Appeals distinguishes between "complete preemption" for claims by an ERISA plan participant and beneficiary seeking to recover benefits due under a plan or to enforce rights under the terms of a plan under ERISA section 502(a) and "express" or "ordinary" preemption under section 514(a) of ERISA, cited by Lincoln Investment in its Notice of removal. *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999). ERISA's express preemption provision at section 514(a) provides: "Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. …" 29 U.S.C. § 1144(a). Complete preemption under section 502(a) is a question of federal subject matter jurisdiction serving as a basis for removal while express or ordinary preemption under section 514(a), arising as a federal defense to a state law claim, and does not justify removal. *City of Hoboken*, 45 F.4th at 708 (quoting *Rivet v. Regions Bank of La.*, 522 U.S. 470, 478 (1998)); *Prime Healthcare Servs.-Lower Bucks, LLC v. Cigna Health and Life. Ins. Co.*, --- F. Supp. 3d ---, No. 23-1313, 2023 WL 6927330, at *2–*3 (E.D. Pa. Oct. 19, 2023).

The Supreme Court requires we apply a two-pronged test to determine whether a state law claim is completely preempted under ERISA section 502(a) (29 U.S.C. § 1132(a)) and thus removable. Congress, through ERISA, has completely preempted state law claims  only if (1) Ms. James could have brought her claim under ERISA's civil enforcement provision section 502(a); **and** (2) no other independent legal duty supports Ms. James's claims. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004); *N.J. Carpenters and the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 303 (3d Cir. 2014). Ms. James could not have brought her claims under ERISA's civil enforcement provision. ERISA's civil enforcement provision allows a "participant or beneficiary" to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan" and allows "a participant, beneficiary, or fiduciary" to enjoin "any act or practice" violating the statute or the terms of a plan or seek other appropriate equitable relief. 29 U.S.C. § 1132(a)(1), (3). Ms. James is neither a participant nor beneficiary of the pension plans at issue here. Congress limits standing under ERISA to participants and beneficiaries. Ms. James could not

have brought her claims under ERISA and the first prong of *Davila* is not satisfied. Congress did not completely preempt her state law claims.

[35] *Grable*, 545 U.S. 308; *Gunn v. Minton*, 568 U.S. 251 (2013).

[36] ECF No. 29.

[37] *Grable*, 545 U.S. at 312.

[38] *Id.*

[39] *Id.* at 310–11.

[40] *Id.* at 315.

[41] *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 314).

[42] *Id.* at 255.

[43] *Id.* at 259.

[44] *Id.*

[45] *Id.* at 258 (quoting *Grable*, 545 U.S. at 313–14).

[46] *Id.* The Court in *Gunn* ultimately determined Mr. Minton failed to satisfy the third and fourth prongs of the *Grable* test and held federal patent law did not deprive the state court of subject matter jurisdiction. *Id.* at 264–65.

[47] *Maglioili v. Alliance HC Holdings, LLC*, 16 F.4th 393, 413 (3d Cir. 2021) (quoting *Grable*, 545 U.S. at 312).

[48] *City of Hoboken*, 45 F.4th at 707.

[49] *Id.* at 706.

[50] *Id.* 709 (citing *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)).

[51] *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 711 (8th Cir. 2023) (emphasis in original) (quoting *Franchise Tax Bd.*, 463 U.S. at 13). Like *City of Hoboken*, the state of Minnesota in its climate change litigation alleged fossil fuel producers misrepresented the effects of fossil fuels on the environment. *Id.* at 707.

[52] *Id.* at 707.

[53] *Id.* at 712 (footnote omitted).

[54] *Id.*

[55] *Solomon v. St. Joseph Hosp.*, 62 F.4th 54, 64 (2d Cir. 2023) (quoting *Tantaros v. Fox News Network, LLC*, 12 F. 4th 135, 141 (3d Cir. 2021)).

[56] *Id.* at 57–58.

[57] *Id.* at 64 (quoting *Tantaros*, 12 F. 4th at 141–42).

[58] 12 Pa. Cons. Stat. Ann. § 5104(a).

[59] *In re Lewis*, 574 B.R. 536, 539 (Bankr. E.D. Pa. 2017) (quoting *In re Polichuk*, 506 B.R. 405, 435 (Bankr. E.D. Pa. 2014) (addressing the purpose of the fraudulent transfer provisions in both the Bankruptcy Code and Pennsylvania's statute). Pennsylvania's Uniform Voidable Transactions Act if formerly known as the Pennsylvania Uniform Fraudulent Transfer Act before amendment by the General Assembly in 2017.

[60] 12 Pa. Cons. Stat. Ann. § 5104(a)(1).

[61] *Hamill v. Twin Cedars Senior Living, LLC*, No. 20-231, 2023 WL 10991318, at *7 (M.D. Pa. Sept. 20, 2023).

[62] 12 Pa. Cons. Stat. Ann. § 5104(b); *Chestnut Street Consol., LLC v. Dawara*, 619 F. Supp. 3d 489, 506 (E.D. Pa. 2022).

[63] 12 Pa. Cons. Stat. Ann. § 5104(a)(2); *Hamill*, 2023 WL 10991318 at *7.

[64] 12 Pa. Cons. Stat. Ann. § 5104(a).

[65] *Id.* § 5101(b) (emphasis added).

[66] *Id.* (emphasis added).

[67] *Id.* The comment to Pennsylvania's Act clarifies the meaning of "nonbankruptcy law." It is "the law of a state or federal law that is not part of the Bankruptcy Code, Title 11 of the United States Code. The definition of 'asset' thus does not include property that would be subject to administration for the benefit of creditors under the Bankruptcy Code unless it is subject under other applicable law, state or federal, to process for the collection of a credit's claim against a single debtor." *Id.* § 5101, Uniform Law Comment § 1, ¶ 2.

[68] 29 U.S.C. § 1056(d).

[69] *See e.g.*, ECF No. 23 at 9.

[70] 493 U.S. 365 (1990).

[71] *Id.* at 372–77.

[72] No. 23-5086, 2024 WL 1385935 (E.D. Pa. Apr. 1, 2024).

[73] *Id.* at *2.

[74] *Id.* at *4.

[75] *Pioneer Commercial Funding Corp. v. Am. Fin. Mortg. Corp.*, 855 A.2d 818, 827 (Pa. 2004) (quoting *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)).

[76] *Wiernik v. PHH U.S. Mortg. Corp.*, 736 A.2d 616, 622 (Pa. Super. Ct.), *appeal denied*, 751 A.2d 193 (Pa. 1999) (citation omitted).

[77] 546 U.S. 132 (2005).

[78] *Id.* at 134. Section 1447(c) permits an award of attorney's fees: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

[79] *Martin*, 546 U.S. at 141.

[80] *Id.* (emphasis added).

[81] *Id.*

[82] *Id.*

[83] *Id.*

[84] ECF No. 8-1.

[85] 661 F. App'x 776 (3d Cir. 2016).

[86] *Id.* at 778.

[87] *Id.* at 779.

[88] *Id.*